The relief described hereinbelow is SO ORDERED.

Signed May 09, 2007.



_____
ROBERT D. BERGER
United States Bankruptcy Judge

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

In re:

| | |
|---|---:|
| VALERIE ELAINE KINSEY, | Case No. 06-20921 |
| Debtor. | Chapter 13 |

In re:

| | |
|---|---:|
| BENJAMIN DWIGHT WALTERS and | Case No. 06-21113 |
| JAMIE MICHAELE WALTERS, | Chapter 13 |
| Debtors. | |

In re:

| | |
|---|---:|
| JEFFERY THOMPSON, | Case No. 06-21083 |
| Debtor. | Chapter 13 |

In re:

| | |
|---|---:|
| FARON L. PRINCE and | Case No. 06-20679 |
| PARRISH K. PRINCE, | Chapter 13 |
| Debtors. | |

**MEMORANDUM OPINION AN ORDER CONFIRMING CHAPTER 13 PLANS**

Confirmation of the above Debtors' respective Chapter 13 plans is pending before the Court.[1] At the Debtors' confirmation hearings, the Court confirmed the Debtors' Chapter 13 plans over the objections of the Creditors[2] based upon this Court's prior decision in *In re Wampler*. This Memorandum Opinion is in accord with *Wampler*, confirms the plans, and constitutes the Court's findings and conclusions.

### *Factual Background*

The Creditors loaned their respective Debtors money to purchase automobiles for Debtors' personal use within the 910 days preceding the filing of the above-captioned proceedings. The automobiles served as collateral for the loans. As a result, the Creditors assert that 11 U.S.C. § 1325(a)[3] requires their allowed claims be paid in full at the contract rate of interest over the duration of the Debtors' Chapter 13 plans. Under the Debtors' plans as confirmed, the Creditors' allowed claims are paid in full without postpetition interest. The specific facts for each case are as follows.

### **Kinsey**

WFAF's proof of claim indicates its collateral is a 2005 Mitsubishi Lancer, with a balance due of $15,969.85, but the claim does not state the value of the vehicle. The Debtor values the vehicle at $15, 986.68. The contract interest rate is 19.4%.

---

[1] The same attorney, Jill D. Olsen, represents the various creditors objecting to the above Debtors' plans based upon treatment of 910 car claims. Ms. Olsen previously represented the creditor in this Court's ruling in *In re Wampler*, 345 B.R. 730 (Bankr. D. Kan. 2006), *appeal dismissed per stipulation*, No. 06-3275 (10th Cir. October 30, 2006). The *Wampler* appeal became moot after the debtors amended their plan to surrender the 910 car. In order to insure a 910 car case remains viable through the appellate process, the Court has grouped the above cases together based upon the similarity of the facts, the commonality of the objections, and the creditors' intent to pursue an appeal of the *Wampler* decision.

[2] "Creditors" collectively refers to Wells Fargo Auto Finance ("WFAF") and Wells Fargo Financial ("WFF"), the objecting creditors.

[3] These cases were filed after October 17, 2005, when most provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 became effective. All statutory references to the Bankruptcy Code are to 11 U.S.C. §§ 101-1330 (2006), unless otherwise specified.

### Walters

WFF's proof of claim indicates its collateral is a 1999 Chevrolet Blazer, with a balance due of $7,767.41. WFF's proof of claim also indicates the balance due is the value of the vehicle. The Debtors value the vehicle at $7,200.00. The contract interest rate is 19.99%.

### Thompson

WFF's proof of claim indicates its collateral is a 2002 Suzuki XL-7, with a balance due of $11,762.29. WFF's proof of claim also indicates the balance due is the value of the vehicle. The Debtor values the vehicle at $7,000.00. The contract interest rate is 18.74%.

### Prince

WFAF's proof of claim indicates its collateral is a 2004 GMC C1500 Sierra, with a balance due of $28,638.82, but the proof of claim does not reflect the value of the vehicle. Debtors value the vehicle at $18,350.00. The contract interest rate is 7.84%.

*Discussion*

**I.     The Hanging Paragraph Removes 910 Car Claims from the Ambit of 11 U.S.C. § 1325(a)(5)**

Before and after *Wampler*, most courts have interpreted the Hanging Paragraph[4] to mean merely that the debtor is prohibited from bifurcating a creditor's claim and cramming down the value of the secured claim to the collateral's value leaving an unsecured claim for any deficiency.[5] However, the Hanging Paragraph does not state it only prohibits the bifurcation of

---

[4] The Hanging Paragraph of § 1325(a) reads: "For purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle (as defined in section 30102 of title 49) acquired for the personal use of the debtor, or if collateral for that debt consists of any other thing of value, if the debt was incurred during the 1-year period preceding that filing." The provision is an unnumbered paragraph at the end of the subsection; thus, it has become commonly referred to as the "Hanging Paragraph."

[5] *In re DeSardi*, 340 B.R. 790, 812 (Bankr. S.D. Tex. 2006) ("[A 910 Language] claim is an allowed secured claim and may be treated under § 1325(a)(5)."); *In re Fleming,* 339 B.R. 716, 722 (Bankr. E.D. Mo. 2006) ("The [910 Language] Language merely prohibits the bifurcation and cram down of the Car Creditors' claims and

- 3 -

certain claims, even though such limitation and effect could have been easily and succinctly drafted. The Hanging Paragraph is more broadly written, acknowledges a specific class of claims, and alters their treatment. Other courts have found that despite the Hanging Paragraph's clear language stating § 506 does not apply to § 1325(a)(5), 910 car claimants nonetheless have an "allowed secured claim" for purposes of preserving the present value of the entire claim under § 1325(a)(5)(B)(ii). In attempting to explain this conclusion, those courts have taken a snippet from *Dewsnup v. Timm*[6] and linked § 502[7] and § 101(37)[8] to create a new definition of "allowed secured claim" for § 1325(a)(5). The snippet from *Dewsnup* which has been incongruously interpreted into § 1325(a)(5) says that the phrase "allowed secured claim" is not a term of art and should be read separately word by word to mean any claim that is first fully allowed and then also secured by a lien.[9] By reading each term separately, these courts reason that although § 506 is no longer applicable, a creditor whose claim falls under the Hanging Paragraph may still have an *allowed* claim under § 502 which is *secured* by a lien as defined by § 101(37). Thus, courts have allowed creditors present value interest on their entire claim amount rather than just the

---

thus quantifies the Car Creditors' secured claims at the balance due on the filing date."); *In re Brown*, 339 B.R. 818, 820 (Bankr. S.D. Ga. 2006) ("[T]he [910 Language] means only that the claims it describes cannot be bifurcated into secured and unsecured portions under § 506(a)."); *In re Ezell*, 338 B.R. 330, 340 (Bankr. E.D. Tenn. 2006) ("[W]hen the creditor files its claim as secured, the [910 Language following § 1325(a)(9)] precludes the use of Revised § 506(a) to reduce or bifurcate that claim into secured and unsecured components."); *In re Wright*, 338 B.R. 917, 919-20 (Bankr. M.D. Ala. 2006) ("[T]he claims of these creditors [affected by the application of the 910 Language following § 1325(a)(9)] must be treated as fully secured under the plan."); *In re Robinson*, 338 B.R. 70, 73-74 (Bankr. W.D. Mo. 2006) (" [T]hese creditors are entitled to secured claims for the total amount of their claims, regardless of the value of the respective vehicles, and the Debtor cannot bifurcate them."); *In re Johnson*, 337 B.R. 269, 272 (Bankr. M.D.N.C. 2006) ("The [910 Language following § 1325(a)(9)] simply provides that debtors may not bifurcate the claims of lenders with purchase money security interests in vehicles purchased within 910 days of bankruptcy for the debtor's personal use."); *see also In re Horn*, 338 B.R. 110 (Bankr. M.D. Ala. 2006).

[6] 502 U.S. 410 (1992). *Dewsnup* is a Chapter 7 case in which the Supreme Court found "allowed secured claim" has a different meaning in § 506(d) than in § 506(a) so that Chapter 7 debtors may not "strip down" a creditor's lien on real property to the value of the collateral.

[7] 11 U.S.C. § 502 provides the procedure for claim allowance.

[8] "The term 'lien' means charge against or interest in property to secure payment of a debt or performance of an obligation." 11 U.S.C. § 101(37).

[9] *See, e.g., Brown*, 339 B.R. at 821 (citing *Dewsnup*, 502 U.S. at 415). *Brown* concludes that the Supreme Court's term-by-term interpretation of the phrase "allowed secured claim" in *Dewsnup* is equally applicable to the phrase "allowed secured claim" in § 1325(a)(5).

value of their collateral.

This conclusion is at odds with the plain meaning of § 1325(a)(5). When analyzing the phrase "allowed secured claim" specifically in the context of § 1325(a)(5), the Supreme Court found the phrase means the value of the collateral as determined under § 506(a).[10] Nowhere does the Code say a creditor may have an "allowed secured claim" under § 1325(a)(5) without § 506(a). The very essence of § 1325(a)(5) is to preserve the value of the collateral, not the value of the entire claim.[11] The Supreme Court has stated, "The value of the allowed secured claim is governed by § 506(a) of the Code."[12] In another case, the Supreme Court stated § 506 "governs the definition and treatment of secured claims, *i.e.*, claims by creditors against the estate that are secured by a lien on property in which the estate has an interest."[13] Further, the Supreme Court has found that § 506 "defines the amount of the secured creditor's allowed secured claim and the conditions of his receiving postpetition interest."[14] One year after *Dewsnup* said "allowed secured claim" in §506(d) need not be read as an indivisible term of art defined by reference to §506(a), the Supreme Court referred to "secured claim" as a term of art defined by §506(a) for the purposes of distinguishing between a "secured claim" and a "claim secured by a lien" in the context of §1322(b)(2).[15] To say that § 506(a) does not determine "allowed secured claim" in § 1325(a)(5) ignores the Supreme Court cases holding to the contrary,[16] and, as pointed out in *Wampler,* opens the present value interest requirement to many

---

[10] *Associates Commercial Corp. v. Rash*, 520 U.S. 953, 957 (1997).
[11] *In re Paschen*, 296 F.3d 1203, 1206 (11th Cir. 2002).
[12] *Rash,* 520 U.S. at 957.
[13] *United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 238-39 (1989).
[14] *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs.,* 484 U.S. 365, 371 (1988).
[15] *Nobelman v. American Sav. Bank,* 508 U.S. 324, 331 (1993).
[16] *Ron Pair Enters., Inc.,* 489 U.S. at 239; *Till v. SCS Credit Corp.,* 541 U.S. 465, 470 (2004) (defining creditor's "secured claim" under § 506(a) for purposes of § 1325(a)(5)); *Rash,* 520 U.S. at 957 (the value of the allowed secured claim under § 1325(a)(5)(B)(ii) is governed by § 506(a)); *Nobelman,* 508 U.S. at 331.

claims, which was clearly not the intent of Congress.[17] An allowed secured claim in § 1325(a)(5) is the present value of the collateral.[18] Section 1325(a)(5) concerns itself with preserving the value of the collateral, not the entire claim.

Section 1325(a)(5) makes the sole reference to treatment of allowed secured claims for plan confirmation. However, as to 910 car claims under the Hanging Paragraph, § 506 does not apply for the purposes of subparagraph (5). Because § 506 does not apply to 910 car claimants and because the only means by which creditors are entitled to an allowed secured claim is determined under § 506, those creditors cannot hold allowed secured claims and are not entitled to treatment under § 1325(a)(5). As noted in *Wampler,* this conclusion is supported by the frequently cited and well-regarded bankruptcy treatise *Collier on Bankruptcy* and is worth repeating here:

> Language added at the end of section 1325(a) by the 2005 amendments to the Bankruptcy Code removes certain claims from the protections of section 1325(a)(5). This new language states that for purposes of section 1325(a)(5), section 506 shall not apply to certain claims. Such claims, therefore, cannot be determined to be allowed secured claims under section 506(a) and are not within the ambit of section 1325(a)(5). Such claims may still be modified under section 1322(b)(2), which allows modification of the rights of holders of secured claims, with certain exceptions, but the restrictions on modification that apply to allowed secured claims under section 1325(a)(5) do not apply. A debtor is presumably bound only by the dictates of good faith and the other provisions of the Code in determining how such claims may be modified. Some courts, understandably, may look to prior law for guidance regarding what modifications are equitable.[19]

This Court agrees with *Collier on Bankruptcy*, which goes on to state:

It is possible that this language [the Hanging Paragraph] was intended to prohibit the use of section 506(a) to bifurcate a secured claim into an allowed secured

---

[17] *Wampler,* 345 B.R. at 739.
[18] *Rash,* 520 U.S. at 957 (under § 1325(a)(5)(B)(ii) the debtor "is required to provide the creditor with payments, over the life of the plan, that will total the present value of the allowed secured claim, *i.e.*, the present value of the collateral . . . .").
[19] 8 COLLIER ON BANKRUPTCY ¶ 1325.06[1][a] at 1325-28 (Alan N. Resnick & Henry J. Sommer, eds., 15th ed. rev. 2006).

- 6 -

claim and an allowed unsecured claim as part of the cramdown permitted by section 1325(a)(5)(B) and, therefore, that such claims should be treated as fully secured claims regardless of the value of the collateral. But, even if that was the intent, because the new language added to section 1325(a) renders entirely inapplicable for some creditors the only section, section 506(a), that gives those creditors allowed secured claims, it does not to carry out such intent. In fact, earlier versions of the 2005 bankruptcy legislation had contained language which eliminated only the section 506(a) bifurcation of certain claims into secured and unsecured claims based on the value of the property, but did not eliminate their status as allowed secured claims. However, that language was not retained. Courts are required to implement the language of the statute and not what they think Congress might have intended instead.[20]

The statutory construction explained by *Collier* and adopted by this Court is most in concert with the plain reading of the amendment and, hence, in conformity with the interpretive dictate of the Supreme Court that "when the statute's language is plain, the sole function of the courts - at least where the disposition required by the text is not absurd - is to enforce it according to its terms."[21]

The Hanging Paragraph prohibits the use of § 506 to determine the value of the collateral. If the value of the claim, *i.e.*, the value of the collateral, cannot be calculated, then it follows that the allowed amount of the secured claim referenced in § 1325(a)(5)(B)(ii)[22] cannot be preserved. The Code generally does not allow interest on entire claim amounts.[23] Unsecured and undersecured creditors generally are not allowed postpetition interest on unsecured claims, and oversecured creditors are only entitled to interest if it comes from the collateral's equity

---

[20] 8 COLLIER ON BANKRUPTCY ¶ 1325.06[1][a] at 1325-28 to 1325-29 (Alan N. Resnick & Henry J. Sommer, eds., 15th ed. rev. 2006) (citations omitted).

[21] *Lamie v. United States Trustee*, 540 U.S. 526, 534 (2004) (quoting *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.,* 530 U.S. 1, 6 (2000) (internal quotation marks omitted) (quoting *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 241 (1989) (in turn quoting *Caminetti v. United States,* 242 U.S. 470, 485 (1917)))).

[22] "(a) Except as provided in subsection (b), the court shall confirm a plan if – (5) with respect to each allowed secured claim provided for by the plan – (B)(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the *allowed amount of such claim* . . . ." (Emphasis added).

[23] 11 U.S.C. § 502(b)(2); *In re Milham,* 141 F.3d 420, 423 (2nd Cir. 1998).

- 7 -
07.05.09 Kinsey Memorandum Opinion.wpd
Case 06-20679    Doc# 65    Filed 05/09/07    Page 7 of 14

cushion.[24] This notion recognizes the pre-Code rule that it is unfair to award secured creditors interest from the estate's unencumbered assets before unsecured creditors receive any principal.[25] Plan interest on secured claims in Chapter 13 is solely a function of the present value requirement of the cramdown provision. Section 1325(a)(5)(B)(ii) is intended to put the creditor in the same economic position it would have been in had it received the value of its collateral immediately. Section 1325(a)(5)(B)(ii) is not intended to put the creditor in the same position it would have been in had it renewed a loan. The Code protects the creditor's interest in property, not profit. Accordingly, if the creditor is not crammed down, he is not eligible for the protection found in § 1325(a)(5)(B)(ii). The 910 creditor's interest is already preserved in another manner – its claim is not reduced to the present value of the collateral.

The lynchpin in the majority's analysis is *Dewsnup,* but *Dewsnup* is easily distinguished in that it was limited to a Chapter 7 proceeding wherein the debtor attempted to employ § 506(d) to strip down a mortgagee's lien on real property.[26] The Supreme Court expressed "no opinion as to whether the words 'allowed secured claim' have a different meaning in other provisions of the Bankruptcy Code"[27] and did not consider § 1325(a)(5). Ironically, the majority position seizes upon *Dewsnup*'s definition of "allowed secured claim" from § 506(d), which is also inapplicable to a Hanging Paragraph claim. Further, the Supreme Court was still working within the framework of the only statute which gives creditors allowed secured claims. Whereas *Dewsnup* endeavored to provide two different definitions for the words "allowed secured claim" as found

---

[24] 11 U.S.C. § 506(b); *Milham,* 141 F.3d at 423 (§ 506(b) being the exception to the rule and allowing post-petition interest for oversecured creditors, but only to the extent of their security cushion and only until the confirmation date).

[25] *Timbers of Inwood Forest*, 484 U.S. at 373.

[26] *Dewsnup*, 502 U.S. at 410-12.

[27] *Dewsnup*, 502 U.S. at 417 n.3.

- 8 -

07.05.09 Kinsey Memorandum Opinion.wpd

in two different subsections of §506, the majority now relies on *Dewsnup* to provide two different definitions for the exact same words found in the exact same place in § 1325(a)(5). This Court will not string together the definition of lien with the Code section governing claim allowance (§ 502) to conclude that a 910 car claim must be an allowed secured claim to be paid interest under § 1325(a)(5)(B)(ii). The mere definition of "lien" found in § 101(37) does not contemplate the manner in which a secured claim is treated under a Chapter 13 plan as §506 does. An allowed claim with a lien does not refer to the value of the "charge against or interest in" the collateral. A creditor with a lien in a 910 car has the same *legal* right or interest in the vehicle whether the vehicle is worth $10,000 or scrap value. The allowance of the entire debt as the claim does not quantify the security as § 1325(a)(5)(B)(ii) requires. Thus, two definitions for the same phrase in the same statute does not make sense. Section 506 defines "allowed secured claim" and sets a value to determine its treatment - a value which is crucial to the correct operation of § 1325(a)(5)(B)(ii). Again, if the Hanging Paragraph prohibits the statutory tool to determine a value, § 1325(a)(5) cannot be applied because § 1325(a)(5) is concerned with preserving cramdown values, not entire claim amounts.

Section 506 provides the only mechanism in the Code to determine the treatment of an allowed secured claim. State law may define and create property interests, but it is the function of the Code to determine claim treatment in bankruptcy. After all, a creditor may have a lien without holding an allowed secured claim.[28] By removing § 506 from the equation, claims falling under the Hanging Paragraph are a new class of claims secured by a non-bankruptcy lien, allowed under § 502, and treated outside the confines of § 1325(a)(5). The existence of the lien requires payment of the full claim amount during the pendency of the plan. Far from being

---

[28] *Matter of Tarnow*, 749 F.2d 464, 465 (7th Cir. 1984).

- 9 -

deprived of their prepetition liens, creditors holding liens in property subject to the Hanging Paragraph will retain the lien until payment of their allowed claims. The Hanging Paragraph does not alter the creditor's prepetition lien, but provides for separate and distinct treatment of the allowed claim. As allowed, but not secured under the Code, 910 car claims may not include unmatured or, in this case, postpetition interest.[29]

Since the Hanging Paragraph does not allow payment as an allowed secured claim of present value interest on these 910 car claims, the Debtors in the cases at bar provide for appropriate treatment because their plans provide for retention of the collateral and payment in full of the Creditors' claims over the length of the plan without postpetition interest. Lenders enjoy special treatment for their 910 car claims in Chapter 13 because of the Hanging Paragraph, but these claims are no longer treated as allowed secured claims under the plan and are not entitled to postpetition interest under § 1325(a)(5)(B)(ii).

Another approach has been adopted by at least one court.[30] That court found that § 506 is definitional and that "simply because a claimant holds a claim, secured by a valid state law lien, does not make the claim an 'allowed secured claim' for Bankruptcy Code purposes. With all due respect to my colleagues, this Court rejects the reasoning of this line of cases. . . . But, if § 506 is made inapplicable to the claim by the hanging paragraph, it may in fact be a claim secured by a lien but not qualify for treatment as an 'allowed secured claim' under the Bankruptcy Code."[31] The court went on to conclude,

> [T]he exclusion of § 506 [because of the Hanging Paragraph] is simply, and only, for purpose [sic] of determining if the plan, as proposed, satisfies the requirements of § 1325(a)(5) as to the claim. In other words, the effect of § 506's exclusion is not complete but serves to eliminate only those provisions that might

---

[29] § 502(b)(2).
[30] *In re White*, 352 B.R. 633, 643 (Bankr. E.D. La. 2006).
[31] *Id.*

affect confirmation and the required treatment of the creditor's claim. Thus, it is designed to disassociate both the rights granted and limitations imposed by § 506 on secured claims *vis a vis* the confirmation process in chapter 13. What follows from this reasoning is that a qualifying purchase money security interest claim is not limited to the value of the collateral securing the debt; nor is it allowed post petition interest or other charges which may accrue on the claim, regardless of the existence of equity. Instead, the treatment of the purchase money security interest claim [910 claim] is entirely dependent upon the rights provided in § 1325(a)(5).[32]

In a unique interpretation, the *White* court concluded that the 910 claimant is entitled to postpetition interest because § 1325(a)(5)(B)(ii) requires that "the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim . . . ."[33] Since a 910 claim may not be stripped down to collateral value or, perhaps in more common parlance, bifurcated, the 910 claim as of the petition date may not be reduced. Under the *White* court's approach, the 910 claimant received the present value of its claim by virtue of § 1325(a)(5)(B)(ii). Hence, the 910 claimant was entitled to a stream of payments equal to the present value of its claim (*i.e.*, postpetition interest).[34] The court concluded that "the creditor is entitled to the present value of its claim based on a *Till* formula rate."[35] At the end of the day, while finding that the 910 claimant does not hold an allowed secured claim, the *White* court required payment in full of the 910 claim with postpetition interest.

Although the *White* court's attempt to integrate the relevant Code provisions is more convincing than that of the majority, this Court is not persuaded to change its initial holding as set out in *Wampler*. Throughout § 1325(a)(5), the term "claim" is used, but it is a defined term and qualified at the onset of § 1325(a)(5), which states "with respect to each *allowed secured*

---

[32] *Id.* at 644.
[33] *Id.* at 644-45.
[34] *Id.* at 649.
[35] *Id.* at 650.

*claim* provided for by the plan." The subsequent references to the term "claim" in § 1325(a)(5) are, by definition, references to an allowed secured claim, a classification that the Hanging Paragraph eviscerates with regard to 910 claims. Ultimately, the *White* court employed an analysis regarding the treatment of 910 claims under § 1325(a)(5) that of necessity is tied to the term "allowed secured claim." If, as the *White* court suggests, a 910 claimant does not hold an allowed secured claim, then of necessity all subsequent references to "claim" in the subtext may not apply to the treatment of a 910 claim since subsection 1325(a)(5) interchangeably uses "claim" and "allowed secured claim."

It is generally understood that to provide for the present value of a claim, it is necessary for the debtor to pay interest on the claim in consideration of the deferred payments.[36] For instance, the liquidation test (best-interest-of-creditors test) under § 1325(a)(4) requires that the debtor pay the present value to unsecured creditors of what they would receive in a hypothetical Chapter 7 liquidation. However, under the § 1325(a)(4) present value requirement, the unsecured creditors are not necessarily entitled to the *Till* rate of interest, but are entitled to a rate of interest comparable to that which would have been received if the unsecured claim were immediately paid to a holder and invested.[37] This interest rate should be lower than the *Till* rate since the issues regarding value of collateral and adequate protection are not applicable. An investment rate of interest more properly effects the directive of the statute.[38] If this Court were to adopt the *White* court's analysis, then it would be more inclined to adopt the present value interest rate established under § 1325(a)(4) since it is the present value of the 910 creditor's debt

---

[36] *Till v. SCS Credit Corp.*, 541 U.S. 465 (2004). However, at least one court has questioned whether the *Till* plurality decision is binding precedent. *See In re Cook*, 322 B.R. 336, 341 (Bankr. N.D. Ohio 2005).

[37] *See In re Plascencia*, 354 B.R. 774, 782 (Bankr. E.D. Va. 2006).

[38] However, there is not a consensus as to the calculation of the present value interest rate under § 1325(a)(4). *See, e.g., In re Cook*, 332 B.R. 336, wherein the court calculated the interest rate as that "for short term, oversecured loans."

- 12 -

that is paid. If a 910 claimant does not hold an allowed secured claim, then payment of the *Till* rate of interest is less compelling.[39]

## II. The Criteria Set Forth in § 1325(a) Are Not the Exclusive Grounds for Confirming a Chapter 13 Plan Over a Creditor's Objection.

Even if the criteria set forth in § 1325(a) otherwise entitles the Creditors to allowed secured claims with interest accruing thereon, this Court retains the discretion to confirm Chapter 13 plans over a creditor's objection.[40] As noted by the Third Circuit in *In re Szostek*, "[i]f Congress had intended for § 1325(a) to be mandatory, it could have included that requirement with the requirements already listed in § 1322."[41] Further evidence of the discretionary nature of § 1325(a) is found by comparison with the language of § 1129(a), which provides that a court shall confirm a Chapter 11 plan "*only if*" certain requirements are met.[42]

> Thus, the distinction between § 1322 and § 1325(a) and the inclusion of the "only if" language in § 1129, which is absent from § 1325(a), show an unmistakable intent on the part of Congress that a plan may be confirmed even if it does not comport with the requirements of § 1325(a)(5).[43]

Here, the Court would have confirmed the Debtors' Chapter 13 plans regardless of whether § 1325 requires the Creditors' claims be paid with postpetition interest, either at contract or some other rate, over the duration of the Debtors' Chapter 13 plans. The Court believes the Debtors' plans were filed in good faith. Because the Debtors propose to pay the Creditors' allowed claims over the duration of the plan, the Creditors could very well receive more than they would have received had the Debtors filed under Chapter 7 or otherwise surrendered the collateral to the Creditors, or if the liens were stripped down in a Chapter 13 before BAPCPA.

---

[39] *See In re Cook*, 322 B.R. 336, 341 (Bankr. N.D. Ohio 2005).
[40] *Matter of Escobedo,* 28 F.3d 34, 35 (7th Cir. 1994); *In re Szostek*, 886 F.2d 1405, 1411 (3rd Cir. 1989).
[41] 886 F.2d at 1411. Notably, the Tenth Circuit has cited *Szostek* as supporting authority for its decisions, although in relation to different legal issues, on at least two other occasions. *See In re Andersen*, 179 F.3d 1253 (10th Cir. 1999); *In re Talbot*, 124 F.3d 1201 (10th Cir. 1997).
[42] 11 U.S.C. § 1129(a).
[43] *Szostek*, 886 F.2d at 1411.

- 13 -

The Creditors do not contest that the Debtors' plans satisfy the required elements of § 1322(a). Accordingly, it is within the province of this Court to determine whether the remaining terms of the Debtors' Chapter 13 plans provide appropriate and equitable treatment of the Creditors' claims. The Court finds that the facts and circumstances of these proceedings warrant the conclusion that the Debtors' plans should be confirmed notwithstanding any alleged failure to satisfy criteria found in § 1325(a)(5).

###

ROBERT D. BERGER
U.S. BANKRUPTCY JUDGE
DISTRICT OF KANSAS